IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

'09 JAN 13 P 4:13

| | |
|---|---|
| UNITED STATES OF AMERICA | 09-10005-01 CRIMINAL NO. MLB |
| v. | |
| LAZARE KOBAGAYA | COUNT 1: 18 U.S.C. §1425(a)<br>(Unlawful Procurement of Naturalization) |
| | COUNT 2: 18 U.S.C. § 1546(a)<br>(Fraud and Misuse of Alien Registration Card) |
| | Revocation Allegation 8 U.S.C. § 1451(e)<br>**FILED UNDER SEAL** |

# INDICTMENT

THE GRAND JURY CHARGES THAT:

1. From approximately April 6 through mid-July 1994, an estimated 500,000 to 800,000 people were killed in the course of a genocide in the country of Rwanda. The genocide took place over approximately three months and spread throughout the country. Most of those who were killed belonged to an ethnic/social group known as the Tutsi, while most of the killings were carried out by members of the ethnic/social group known as the Hutu.

2. Between April 15, 1994 and July 18, 1994, LAZARE KOBAGAYA, hereinafter "DEFENDANT," who belonged to the Hutu ethnic/social group, participated in genocidal activities against members of the Tutsi ethnic/social group.

## COUNT 1

### Unlawful Procurement of Naturalization

3.     From on or about December 26, 2005, through on or about July 14, 2006, in the District of Kansas, DEFENDANT knowingly procured his own naturalization contrary to law. Specifically, on or about December 26, 2005, DEFENDANT submitted an Application for Naturalization (Form N-400) to the Wichita office of the United States Citizenship and Immigration Services in Wichita, Kansas, which application the defendant affirmed under penalty of perjury was true and correct. In fact, as DEFENDANT then and there knew, DEFENDANT had made several material false statements in the application to questions contained in Part 10.B., Question 11., and Part 10.D., Questions 15., 23. and 24., which statements are outlined below.

4.     On or about April 11, 2006, in the District of Kansas, DEFENDANT further appeared at the Wichita office of the United States Citizenship and Immigration Services in Wichita, Kansas, for an interview based on his Form N-400 Application at which interview he was placed under oath and verified the same false statements he had earlier provided in the Form N-400.

5.     As a result of DEFENDANT'S false application, the government formally naturalized DEFENDANT on July 14, 2006, in Wichita, Kansas.

6.     In DEFENDANT'S Form N-400 Application at Part 10, Question B. 11., and in his subsequent interview under oath, DEFENDANT falsely stated that he had not persecuted (either directly or indirectly) any person because of race, religion, national origin, membership in a particular social group or political opinion, when in fact, as DEFENDANT then well knew:

   a.     On or about April 15, 1994, at a marketplace called Birambo, DEFENDANT directed a gathering of Hutu to commit arson as part of the genocide against the Tutsi. DEFENDANT made

derogatory remarks about the Tutsi and directed the Hutu who were present to burn the houses of local Tutsi. Following this, Hutu in the gathering proceeded to burn down houses belonging to Tutsi;

b.  On or about April 16, 1994, DEFENDANT ordered "Individual A" to participate in killing Tutsi as part of the genocide. DEFENDANT stabbed "Individual A" in the leg because he refused to participate in the killing. In response to the stabbing, "Individual A" murdered an unknown individual at a place called Ruhuka;

c.  During the period from approximately April 16 through April 19, 1994, DEFENDANT participated in multiple attacks against hundreds of Tutsi who had fled to Mount Nyakizu to escape the genocide. DEFENDANT mobilized attackers and ordered and coerced them to continue their participation in the killing of those Tutsi. Hundreds of Tutsi were killed in these attacks;

d.  In or about early May 1994, DEFENDANT ordered "Individual B" to kill a Tutsi man who had been found in hiding and brought to Birambo. DEFENDANT threatened "Individual B" that his wife would be killed if "Individual B" did not comply. In response to this threat, "Individual B" killed the man who had been brought to Birambo;

e.  In or about late April or early May 1994, DEFENDANT spoke to a gathering of Hutu and directed them to kill Tutsi women who had previously been spared because they were married to or otherwise related to Hutu men. Following this, several local Tutsi women married to Hutu men were attacked, and at least one was killed.

7.  In DEFENDANT'S Form N-400 Application at Part 10, Question D. 15., and in his subsequent interview under oath, DEFENDANT falsely stated that he had not committed a crime

3

for which he had not been arrested, when in fact, as DEFENDANT then well knew, he had committed numerous crimes in Rwanda between on or about April 15, 1994, and on or about July 18, 1994, including, but not limited to, complicity in murder (in violation of articles 311 and 91 of the Rwandan Penal Code), assault and complicity in assault (in violation of articles 318 and 91 of the Rwandan Penal Code), and arson and complicity in arson (in violation of articles 438 and 91 of the Rwandan Code).

8.   In DEFENDANT'S Form N-400 Application at Part 10, Question D. 15., and in his subsequent interview under oath, DEFENDANT falsely stated that he had not committed a crime for which he had not been arrested, when in fact, as DEFENDANT then well knew, he had, between on or about April 15, 1994, and on or about July 18, 1994, committed the crime of genocide as defined in the International Convention on the Prevention and Punishment of the Crime of Genocide and incorporated into Rwandan law through Legislative Decree on February 12, 1975, Official Gazette of the Republic of Rwanda, 1975, p. 246.

9.   In DEFENDANT'S Form N-400 Application at Part 10, Question D. 15., and in his subsequent interview under oath, DEFENDANT falsely stated that he had not committed a crime for which he had not been arrested. In fact, as DEFENDANT then well knew, he had made false representations on his immigrant visa application, Optional Form 230, which he had submitted on March 6, 1997, and sworn to on April 3, 1997. Namely, DEFENDANT falsely represented: (a) that he had lived in Burundi from 1993 to 1995, thereby concealing that he had lived in Rwanda during the genocide in 1994; and (b) that he had not engaged in genocide. These false statements were in violation of Title 18, United States Code, Sections 1001(a), 1015(a), and 1546(a).

10.    In DEFENDANT'S Form N-400 Application at Part 10, Question D. 23., and in his subsequent interview under oath, DEFENDANT falsely stated that he had not ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal, and at Part 10, Question D. 24., and in his subsequent interview under oath, DEFENDANT falsely stated that he had not ever lied to any U.S. government official to gain entry or admission into the United States. In fact, as DEFENDANT then well knew, he had made false representations on his immigrant visa application, Optional Form 230, which he had submitted on March 6, 1997, and sworn to on April 3, 1997. Namely, DEFENDANT falsely represented: (a) that he had lived in Burundi from 1993 to 1995, thereby concealing that he had lived in Rwanda during the genocide in 1994; and (b) that he had not engaged in genocide.

11.    By means of the above-described false statements, DEFENDANT procured his naturalization contrary to law, to wit: 8 U.S.C. §§ 1106(f)(6) & (9), 8 U.S.C. § 1427(a), 8 U.S.C. § 1182(A)(3)(E), 8 U.S.C. § 1451(a), 18 U.S.C. § 1001(a), 18 U.S.C. § 1015(a), and 18 U.S.C. § 1546(a).

In Violation of Title 18, United States Code §1425(a).

## COUNT 2

### Fraud and Misuse of Alien Registration Card

12.    On or about April 11, 2006, in the District of Kansas, DEFENDANT did knowingly use and possess an alien registration receipt card knowing it to have been procured by means of a false claim and statement and to have been otherwise procured by fraud and unlawfully obtained. Specifically, on or about April 11, 2006, during his naturalization interview at the Wichita office of the United States Citizenship and Immigration Services in Wichita, Kansas, DEFENDANT used and possessed an alien registration receipt card and presented it as evidence of his authorized stay in the United

5

States, knowing that it had been procured by means of false claims and statements, fraud and other illegal acts related to his Optional Form 230.

13.  On or about April 11, 2006, DEFENDANT then well knew that he had made false representations on his immigrant visa application, Optional Form 230, which he had submitted to the Wichita office of United States Citizenship and Immigration Services in Wichita, Kansas, on March 6, 1997, and sworn to at the same office on April 3, 1997.

14.  In DEFENDANT'S Optional Form 230 application for immigrant visa and alien registration at Part I, question 21, he falsely represented that he had lived in Burundi from 1993 to 1995, thereby concealing that he lived in Rwanda during the genocide in 1994.

15.  In DEFENDANT'S Optional Form 230 application for immigrant visa and alien registration at Part Two, Question 33 c., he falsely represented that he had not engaged in genocide.

16.  By means of the above-described false statements and fraud DEFENDANT obtained his alien registration receipt card and used that card when applying for citizenship.

17.  Sub-paragraphs a. through e. of paragraph 6 above are repeated and realleged as if fully set forth herein.

In Violation of Title 18, United States Code §1546(a).

Revocation of Citizenship

18.  Upon conviction under Count 1 above, the DEFENDANT's July 14, 2006, naturalization shall, by Court order, be revoked, set aside, and declared void, and DEFENDANT'S certificate of naturalization shall, by the same order, be canceled.

Pursuant to Title 8, United States Code, § 1451(e).

A TRUE BILL

_____1-13-09_____                     ⸺⸺⸺⸺⸺⸺⸺⸺
DATE                                       FOREMAN OF THE GRAND JURY


_(signature)_
MARIETTA PARKER
Acting United States Attorney
District of Kansas
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
(316) 269-6481
Ks. D. Ct. No. 77807

    And

ALAN G. METZGER
Assistant United States Attorney
Office of U.S. Attorney
1200 Epic Center, 301 N. Main
Wichita, KS 67202
(316) 269-6481
Ks. S. Ct. No. 10143

    And

Robert Thomson
Deputy Director
Office of Special Investigations
Criminal Division
Department of Justice


(It is requested that trial be held in Wichita, Kansas.)

7