**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

|                              |   |                          |
|------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,    | ) |                          |
|                              | ) |                          |
| Plaintiff,                   | ) | **CRIMINAL ACTION**      |
|                              | ) |                          |
| v.                           | ) | No. 09-10005-MLB         |
|                              | ) |                          |
| LAZARE KOBAGAYA,             | ) |                          |
|                              | ) |                          |
| Defendant.                   | ) |                          |
|                              | ) |                          |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to suppress items seized pursuant to a search warrant. (Doc. 110) The motion has been fully briefed and is ripe for decision. (Docs. 116, 126). The court conducted an evidentiary hearing on April 28, 2010. The motion to suppress is denied for the reasons herein.

**I.   FACTS[1]**

Defendant Lazare Kobagaya is charged with making several material false statements in his Application for Naturalization and alien registration card in which he allegedly concealed his whereabouts and culpability in connection with the Rwandan Genocide. (Doc. 1). On April 22, 2009, United States Magistrate Judge Donald W. Bostwick issued a search warrant permitting a search of defendant's home located at 3232 SW Oakley Avenue, Topeka, Kansas. The warrant permitted a search for the following:

> 1. Documents in the name of or bearing the name of KOBAGAYA/KABAYA LAZARE/LAZARO, related to and including, but not limited to: the fraudulently obtained alien

---

[1] The facts consist of Boniface Benzinge and Joseph Sebarenzi's testimony heard at the hearing and exhibits admitted by the court.

registration receipt card, United States Passports, other passports, Certificate of United States Citizenship, identity documentation and documentation of alien status in the United States which authorized KOBAGAYA'S entrance into and continued presence in the United States.

2. Documents related to KOBAGAYA'S activities and whereabouts during the time of the Rwandan Genocide in 1994 including, but not limited to, birth certificates, voter identification cards, military identification cards, driver's licenses or other evidence of foreign nationality or citizenship.

3. Correspondence to and from KOBAGAYA/KABAYA LAZARE/LAZARO, related to, but not limited to fraudulently obtained government benefits, i.e. Social Security, Medicare, Medicaid, banks, credit card companies, mortgage companies, social security statements, records, and information and certificates of title.

4. Photographs, related to KOBAGAYA'S activities and whereabouts during the Rwandan Genocide including but not limited to, still photos, negatives, video tapes, films, undeveloped film and the contents thereof: digital images, and slides.

5. Addresses and/or telephone books, Rolodex indices and any documents reflecting names, addresses, telephone numbers, pager numbers, facsimile telephone numbers and/or telex numbers, and safes, including the contents within.

6. Any and all items and materials reflecting KOBAGAYA'S presence and/or residence in Rwanda, Africa during the time of the 1994 Rwandan Genocide, including, but not limited to newspaper clippings, souvenirs, mementos, memorabilia, personal effects, location of birth, employment, and service in the military, militia or any formal or informal armed group, any and all items reflecting membership in, affiliation with or participation in any political group.

7. Any and all items and materials reflecting the identity of parents, family, and relatives.

8. Any and all materials which reflect the location of other storage areas including, but not limited to: storage units, safe deposit boxes, and foreign residences.

(Case No. 09-mj-0651-DWB, Doc. 1, Attachment B).

On April 23, Senior Special Agent Mark Larkin of United States Immigration and Customs Enforcement along with law enforcement

officers executed the search warrant. During the search, the government gathered Kobagaya's passports and immigration papers along with other miscellaneous documents, photographs, and pornography. (Case No. 09-mj-0651-DWB, Doc. 1 at 2).

"Two unidentified black men with Rwandan/Tutsi features who spoke Kinyarwanda were also present." (Doc. 110 at 3). Later these men were identified as Boniface Benzinge[2] and Joseph Sebarenzi.[3] Benzinge and Sebarenzi testified that at the time of the search, they were employed by Lionbridge as interpreters.[4]

Benzinge testified that he translated documents from Kinyarwanda and Kirundi to English. Benzinge stated that he did not take any documents himself and read only the documents brought to him by the officers. He did not open anything, seize any documents, or take any items to officers. Benzinge further testified that he stood behind the officers and moved where they instructed him to go.

Sebarenzi testified that he sat down with defendant during the search and served as an interpreter. He remembered being downstairs while he was interpreting and later came upstairs to the sitting room after he had finished. Sebarenzi testified that he did not assist in searching the house and did not translate documents. Benzinge was translating the documents. Sebarenzi explained that two interpreters were necessary because he served as a interpreter for defendant and

---

[2] Boniface Benzinge is described as a childhood friend and interpreter for deposed Rwandan king, Kigeli V Ndahindurwa.

[3] Joseph Sebarenzi is a former speaker of the Rwanda Parliament and author of God Sleeps in Rwanda: A Journey of Transformation.

[4] Lionbridge is a private company that the government contracted to provide interpreters during the search.

-3-

Benzinge translated the documents.

The court finds Benzinge and Sebarenzi to be credible witnesses.

## II. ANALYSIS

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The validity of a warrant is not determined by "nit-picking" discreet portions of the application. Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)). The court gives great deference to the search warrant that was reviewed and signed by the experienced magistrate. See United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Price, 265 F.3d 1097, 1101 (10th Cir. 2001).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." Harris, 369 F.3d

-4-

at 1165 (quoting United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1330 (10th Cir. 2003)). The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." United States v. Rowland, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990)).

There is no question that Magistrate Judge Bostwick is an experienced man of reasonable caution.

### Particularity Requirement

In addition to these general standards regarding probable cause, the search warrant must also describe with particularity the place to be searched and the things to be seized. U.S. Const. amend. IV. The particularity requirement ensures that the search is as limited as possible, and was intended to prevent the wide-ranging, "exploratory rummaging" of a "general search," which the colonists abhorred. United States v. Foster, 100 F.3d 846, 849 n.3 (10th Cir. 1996) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). If the court determines that portions of the warrant are invalid, it applies the doctrine of severability. United States v. Sells, 463 F.3d 1148, 1150 (10th Cir. 2006) ("Under the severability doctrine, "[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant ....").

Defendant contends that the search warrant lacks particularity as to the things to be seized. Defendant takes issue with the

-5-

language "but not limited to" in paragraphs 1 and 3. The government agrees that paragraphs 1 and 3 would be better if "but not limited to" was excluded and requests that it be severed. The court agrees and "but not limited to" is severed from paragraphs 1 and 3.

Contrary to defendant's position, the court finds that paragraphs 1 and 3 are specific enough in that law enforcement can reasonably identify the items authorized to be seized. The searcher can ascertain that he or she is to seize documents relating to defendant's status as an U.S. citizen and government benefits. Furthermore, these items are directly relevant to the crimes charged in the Indictment as they are evidence of defendant's U.S. citizenship, which is alleged to be fraudulently obtained.

Paragraph 2 authorizes the government to seize documents related to defendant's whereabouts during the time of the Rwandan Genocide in 1994. Defendant contends that this paragraph should be narrowed to documents related to defendant's whereabouts in Rwanda during the genocide or participation in the genocide.

Contrary to defendant's position, the court finds that paragraph 2 does not allow general rummaging. Defendant contends that he was in Burundi during the genocide. Paragraph 2, as written, authorizes law enforcement to search for defendant's whereabouts during the genocide, which would include defendant's presence in Burundi. As such, paragraph 2 is proper as written. Besides, if defendant was in Burundi during the genocide, one would think that he would be happy to have the government find evidence of his presence there.

Defendant contends that paragraph 4 does not provide a particular time frame to limit what photograph, videotape, or film is relevant

to the charges.  Paragraph 4 authorizes seizure of photographs related to defendant's whereabouts and activities during the genocide.  The genocide occurred for approximately three months in 1994.  Therefore, paragraph 4 does provide a time frame in which the searcher can determine what photographs are relevant.[5]  At this juncture, paragraph 4 is adequate.

Paragraph 5 authorizes law enforcement to seize defendant's address books, Rolodex indices, and any document bearing names and/or addresses.  Defendant claims that paragraph 5 permits law enforcement to seize anything with a name or number on it in violation of the particularity requirement.

The government responds that names and addresses are relevant to statements provided by defendant which were detailed in the affidavit.  The affidavit alleges that defendant fled Rwanda with another individual and their families.  The affidavit further alleges that several individuals witnessed defendant in Rwanda during the genocide.  The court agrees with the government that names and addresses are relevant to the allegations.  Therefore, paragraph 5 is adequate.

Defendant claims that paragraphs 6 and 8 do not comport to the particularity requirement.  However, the court does not know documents or personal effects, if any, were seized pursuant to these paragraphs.  Neither the government nor defendant have identified any documents or items seized that are related to defendant's presence in Rwanda during

---

[5] At the hearing, defendant's counsel provided the court with two very large binders containing what the court assumes are copies of several hundred photographs.  The court has not been given any information regarding the photos; i.e. which photos, if any, the government intends to use at trial and/or to which photos defendant may object.

the genocide or other storage areas.  Nor does the return detail that such documents were seized.  (Case No. 09-mj-0651-DWB, Doc. 1 at 2). Regardless, if documents or items relating to defendant's presence in Rwanda or other storage areas were in fact seized, the court finds that they are relevant to the charges and further that paragraphs 6 and 8 were not overly broad.

As to the items seized pursuant to paragraphs 7, defendant makes a general argument that pornography and hundreds of photographs were taken which have no bearing on the crimes alleged.  The government responds that it will not use the pornography and has returned it to defendant.  Some of the photographs portray individuals, including defendant, at weddings, family and/or friend gatherings, and other events.  In paragraph 7 of the search warrant, the government was authorized to seize "[a]ny and all items and materials reflecting the identity of parents, family, and relatives."  (Case No. 09-mj-0651-DWB, Doc. 1, Attachment B).  Some photographs appear to portray defendant's family and relatives and defendant has not argued otherwise.  While some of these photographs will likely not be relevant to the charges alleged, the court finds that they were not outside the bounds of the search warrant.

### Unauthorized Persons

Defendant contends that two unauthorized men were present during the search and aided in seizing documents.  Under Fed. R. Crim. P. 41(e)(1), "[t]he magistrate judge ... must issue the warrant to an officer authorized to execute it."  Ordinarily, non-law enforcement officers are not authorized to execute search warrants unless they are assisting the officer authorized to execute the search warrant.  See

Wilson v. Layne, 526 U.S. 603, 611-12 (1999); Robinson v. City and County of Denver, 39 F. Supp. 2d 1257, 1269 (D. Colo. 1999).

At the hearing, Benzinge and Sebarenzi testified that they served as interpreters during the search. Both testified that they did not gather any documents or photographs. Benzinge assisted the government by translating documents brought to him by the officers. Sebarenzi assisted the government by acting as an interpreter for defendant during the search. Defendant presented no evidence to the contrary. Therefore, Benzinge and Sebarenzi were assisting government agents who were authorized by the search warrant. No violation of Fed. R. Crim. P. 41 occurred.

### III. CONCLUSION

As a result of the above analysis, the court finds that the search warrant did not violate the particularity requirement under the Fourth Amendment. Nor did the presence of two interpreters during the search violate Fed. R. Crim. P. 41. Defendant's motion to suppress (Doc. 110) is denied.

IT IS SO ORDERED.

Dated this __4th__ day of May 2010, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE