IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-10005-01-MLB |
| | ) | |
| LAZARE KOBAGAYA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**GOVERNMENT'S MOTION FOR *IN CAMERA EX PARTE*
REVIEW AND PROTECTIVE ORDER PURSUANT TO SECTION 4 OF THE
CLASSIFIED INFORMATION PROCEDURES ACT**

The United States of America, by and through the United States Attorney, respectfully

moves pursuant to Federal Rule of Criminal Procedure 16(d)(1) and the Classified Information

Procedures Act ("CIPA"), 18 United States Code, App. 3 § 4, for a protective order prohibiting

disclosure of certain classified and sensitive information to the Defense during discovery.  The

Government is prepared to provide Defense attorneys with an unclassified, sensitive summary of

the information necessary to prepare the defense case.  The Government proposes that the

information be disclosed under seal, pursuant to a proposed Protective Order.  The proposed

summary will be sufficient to allow counsel to use the relevant information in pre-trial

procedures.  The classified information that would be withheld is either not exculpatory,

cumulative, privileged, or otherwise not discoverable.

**BACKGROUND**

On January 13, 2009, a grand jury returned a two-court indictment against Lazare Kobagaya charging him with unlawful procurement of naturalization and fraud and misuse of an alien registration card, in violation of 18 U.S.C.§§ 1425(a) and 1546(a).  On April 23, 2009, the defendant was arrested in the District of Kansas and appeared before Magistrate Judge Bostwick.  The indictment charges the Defendant with making misrepresentations during the course of his immigration and naturalization regarding his activities during the 1994 genocide in Rwanda.  Discovery in the case has proceeded over the course of the 2009 and into 2010.  Trial is currently scheduled for April 26, 2011.  On April 22, 2010, the Government filed an *ex parte, in camera* pleading in which it identified a potential discovery issue with respect to classified information.

**ARGUMENT**

I.    **Federal Law Permits the Government to Move *In Camera* and *Ex Parte* for an Order Restricting Discovery**

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time, the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," and that "[t]he court may permit a party to show good cause by a written statement that the court will inspect ex parte."  According to the Advisory Committee Notes, "[a]mong the considerations to be taken into account" when deciding a motion under Rule 16(d)(1) is "the protection of information vital to the national security."  Rule 16 Advisory Committee Notes, 1966 Amendments, Subdivision (e).

Congress provided a mechanism in CIPA for the government to move *in camera* and *ex parte* for permission to restrict discovery of classified information.  The purpose of CIPA is "to

2

protect classified information from unnecessary disclosure at any stage of a criminal trial."
*United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006); *United States v. O'Hara*,
301 F.3d 563, 568 (7th Cir.), *cert. denied*, 537 U.S. 1049 (2002).  As the Sixth Circuit explained:
"[t]he Act permits the government to have the trial court examine classified information *in
camera* and *ex parte* and determine whether it is necessary for the defense."  *United States v.
Smith*, 899 F.2d 564, 565 n.1 (6th Cir.), *cert. denied*, 498 U.S. 848 (1990).  Specifically, CIPA
Section 4 states that the government may seek permission to restrict discovery and that "[t]he
court may permit the United States to make a request for such authorization in the form of a
written statement to be inspected by the court alone."  CIPA Section 4 was enacted "to clarify[]
the court's powers under Federal Rule of Criminal Procedure 16(d)(1) . . . because some judges
have been reluctant to use their authority under the rule."  S. Rep. No. 96-823, 96th Cong.2d
Sess. at 6 (1980).

CIPA's legislative history also makes clear that Congress viewed the *ex parte* nature of
the proceeding to be important.  As the House of Representatives explained, "since the
government is seeking to withhold classified information from the defendant, an adversary
hearing with defense knowledge would defeat the very purpose of the discovery rules."  H.R.
Rep. No. 96-831, pt. 1, 96th Cong.2d Sess. at 27 n. 22 (1980).  The same is true with respect to
Rule 16(d)(1): "it would defeat the purpose of the protective order if the government were
required to make its showing in open court.  The problem arises in its most extreme form where
matters of national security are involved."  Rule 16 Advisory Committee Notes, 1966
Amendments, Subdivision (e).

Several courts have upheld the *in camera* and *ex parte* nature of motions under Rule 16(d)(1) and CIPA Section 4.  *United States v. Mejia*, 448 F.3d 436, 457-58 (D.C. Cir. 2006), *cert. denied*, 127 S.Ct. 989 (2007); *O'Hara*, 301 F.3d at 568; *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984); *United States v. Porter*, 701 F.2d 1158, 1162 (6th Cir.), *cert. denied*, 464 U.S. 1007 (1983); *United States v. Abujihaad*, 2007 WL 2972623, *1 (D. Conn. 2007); *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. 2006); *United States v. Jolliff*, 548 F. Supp. 229, 232 (D. Md. 1981). In addition, courts have recognized that although Rule 16(d)(1) and CIPA Section 4 speak only of the government submitting a written statement, "*ex parte, in camera* hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use," particularly "if the court has questions about the confidential nature of the information or its relevancy."  *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999).

The absence of the defendant or defense counsel from *ex parte* CIPA hearings does not unfairly prejudice the defendant.  As the District of Columbia Circuit has commented, the *ex parte* nature of the CIPA Section 4 hearing is admittedly a "difficult" situation for both the Court and the defendants, but it is "not without close analogies."  *Mejia,* 448 F.3d at 458.  This is because, "[w]hen a court (rather than the prosecutor alone, as is ordinarily the case) reviews evidence *in camera* to determine whether it constitutes a witness statement subject to disclosure under the Jencks Act . . . or exculpatory material subject to disclosure under *Brady*, the defendant is likewise not entitled to access any of the evidence reviewed by the court . . . to assist in his argument that it should be disclosed."  *Id*. (citation and quotation marks omitted).

4

## II.     The Government's Classified Information Privilege Can Preclude Discovery of Relevant Evidence

The government possesses a common law privilege in classified information similar to that adopted for confidential informants by the Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957).  In *Roviaro*, the defendant sought the identity of a confidential informant who was the "sole participant, other than the accused, in the [drug] transaction charged," in the indictment.  353 U.S. at 64.  The Supreme Court recognized the government's privilege in protecting the identity of confidential informants, but held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.  The Court explained that determining whether the privilege should be breached ultimately "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62.  In light of the fact that the confidential informant in *Roviaro* "helped to set up the criminal occurrence and had played a prominent part in it," the Court was convinced that his identity must be disclosed to the defendant. *Id.* at 64.

The Sixth Circuit has explained that under *Roviaro*, the government is required to disclose information "only upon a showing by the defendant that disclosure is essential to a fair trial." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir.1992).  "The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the

5

specific need required by Roviaro." *United States v. Sharp*, 778 F.2d 1182, 1186 (6th Cir. 1985), *cert. denied*, 475 U.S. 1030 (1986). In short, the privileged information must be "necessary," "essential,"or "critical" to the defense in order for the privilege to be breached. *Badley v. United States*, 48 Fed. Appx. 163, 167 (6th Cir. 2002) (unpublished 2002 WL 31245959); *United States v. Coffelt*, 960 F.2d 150 (6th Cir. 1992), *cert. denied*, 506 U.S. 1083 (1993) (unpublished). This standard has been "repeatedly required" by the Sixth Circuit. *Badley*, 48 Fed. Appx. at 167.

Courts outside the Sixth Circuit have applied the *Roviaro* standard in cases involving classified information. *See United States v. Moussaoui*, 382 F.3d 453, 471-72 (4th Cir. 2004) ("In the CIPA context, we have adopted the standard articulated by the Supreme Court in *Roviaro* for determining whether the government's privilege in classified information must give way."). For example, in *United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989), the government filed a motion under CIPA Section 4 to preclude discovery of audio recordings of the defendant's conversations with an undercover law enforcement asset – some of which were relevant to the charges at issue. *Id.* at 623. The district court required the government to disclose the recordings to the defendant, but the District of Columbia Circuit reversed. The court of appeals found that the government possessed a privilege in classified information similar to that articulated by the Supreme Court in *Roviaro. Id.* at 622. While some of the recordings were relevant, none of them met the heightened requirements of *Roviaro* and were therefore not discoverable. *Id*. at 624. The court of appeals held "that classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege." *Id*. at 623.

In *United States v. Smith*, 780 F.2d 1102 (4th Cir. 1985) (en banc), the government sought to prevent disclosure at trial of classified information related to double agent operations by the Central Intelligence Agency. The government argued that it had a common law privilege in classified information similar to the informant's privilege found in *Roviaro. Id.* The Fourth Circuit agreed and applied the *Roviaro* analysis to determine whether the classified information should be disclosed. The court of appeals held that "[a] district court may order disclosure [of classified information] only when the information is at least essential to the defense, necessary to his defense, and neither merely cumulative nor corroborative." *Id.* at 1110 (citations and quotation marks omitted). While the court recognized that the classified information about the double agent operations may have some relevance to the defendant's case, the court nevertheless ruled that the government's privilege could not be overcome because the classified information was "of marginal relevance at best." *Id.* at 1110 n.13. Other circuits are in accord with *Yunis* and *Smith. See Klimavicius-Viloria*, 144 F.3d at 1261; *Pringle*, 751 F.2d at 428.

The application of the *Roviaro* standard in the context of classified information is particularly appropriate because classified information is closely analogous to information provided by confidential informants. The gathering of intelligence information

> resemble[s] closely the gathering of law enforcement information. The confidentiality of sources and the methods used in both instances are critical. Persons who supply information to the government regarding matters taking place in foreign countries are likely to be located outside the United States. Their safety would immediately be placed in jeopardy if their identity were made public. Revealing such information absent an essential need by a defendant would also result in the drying up of a primary source of information to our intelligence community.

7

*Smith*, 780 F.2d at 1108.  The District of Columbia Circuit similarly stated in *Yunis* that "[i]mplicit in the whole concept of an informant-type privilege is the necessity that information-gathering agencies protect from compromise 'intelligence sources and methods.'" 867 F.2d at 623.  The Supreme Court has "expressly recognized" that the government has "a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Id.* (quoting *CIA v. Sims*, 471 U.S. 159, 175 (1985)).  This is particularly true because "if potentially valuable intelligence sources come to think that the [government] will be unable to maintain the confidentiality of its relationship to them, many could well refuse to supply information to the [government] in the first place." *Sims*, 471 U.S. at 175.  These "same concerns must inform analyses by district courts in passing on the discoverability of classified information." *Yunis*, 867 F.2d at 623.

III. **Certain Classified Information Should Be Summarized in Unclassified Form and Disclosed Under Seal, Other Duplicative Information Should Not Be Disclosed**

(See Addendum 1 - Filed *Ex Parte* and Under Seal)

## CONCLUSION

For the foregoing reasons, the Government's asks that the Court grant the motion for a protective order and direct that disclosure be made in the manner described in Addendum 1.

Respectfully submitted,

LANNY A. BREUER
Assistant Attorney General
Criminal Division

8

s/Christina Giffin
_____
CHRISTINA GIFFIN
Criminal Division
Department of Justice
Office of Special Investigations
John C. Keeney Bldg., Suite 200
10th & Constitution Ave., N.W.
Washington, DC 20530
(202) 514-5792
Christina.Giffin@usdoj.gov

Date:   June 25, 2010

CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2010, I electronically filed the foregoing Government's

Motion for *In Camera, Ex Parte* Review and Protective Order Pursuant to Section 4 of the

Classified Information Procedures Act with the Clerk of the Court by using the CM/ECF system

which will send a notice of electronic filing to the following:

Kurt P. Kerns
Ariagno, Kerns, Mank & White, L.L.C.
328 N. Main Street
Wichita, KS 67202

Melanie Morgan
Morgan Pilate, L.L.C.
142 North Cherry Street
Olathe, KS 66061

*Attorneys for Defendant*

s/Christina Giffin
CHRISTINA GIFFIN

10