# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-10005-01-MLB |
| | ) |
| LAZARE KOBAGAYA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER ON**
**MOTION FOR RECONSIDERATION**

By Memorandum and Order filed May 21, 2010 (Doc. 164) (Sealed),[1] the court denied the Motion of Third Parties Human Rights Watch ("HRW") and Dr. Timothy Longman ("Longman") to Quash Subpoenas Duces Tecum Served by Defendant (Doc. 135), and also found that the Government's Objection and Motion to Quash Defendant's Subpoena Duces Tecum Pursuant to Federal Rule of Criminal Procedure 17(c)  (Doc. 138) was moot.

Presently before the court is the Motion for Reconsideration and supporting

---

[1] All of the briefs, declarations and opinions related to (1) the initial motion to quash, (2) the issue of whether the court's memorandum and order denying the motion to quash should remain sealed in whole or in part, and (3) the motion for reconsideration, have been filed under seal.  Thus, in citing to those pleadings in this opinion the court will omit the "sealed" designation.

memorandum (Doc. 172, 173) filed by HRW and Longman.[2] Defendant has filed his Response in Opposition (Doc. 180), and Longman has filed a Reply. (Doc. 191). After review of the briefs and the court's prior Memorandum and Order filed May 21, 2010, the court finds that the Motion for Reconsideration should be denied for the reasons stated below.

**I.    THE LOCAL RULE GOVERNING MOTIONS FOR RECONSIDERATION.**

D. Kan. Rule 7.3(b) provides for motions for reconsideration where there is "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." As discussed in United States v. Reed, No. 06-20068, 2009 WL 211168 at *1 (D. Kan., Jan. 28, 2009):

> Whether to grant or deny a motion for reconsideration is committed to the court's discretion. Hancock v. City of Okla. City, 857 F.2d 1394, 1395 (10th Cir.1988). A motion to reconsider gives the court the opportunity to correct manifest errors of law or fact and to review newly discovered evidence. Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir.1992). A motion to reconsider is appropriate if the court has obviously misapprehended a party's position, the facts, or

---

[2] While the motion is filed on behalf of both Longman and HRW, the court will refer to them collectively as Longman throughout this opinion since Longman is the person that brought this issue to a head by withdrawing as an expert witness for the Government.

> applicable law, or if the party produces new evidence that could not have been obtained through the exercise of due diligence. Voelkel v. General Motors Corp., 846 F.Supp. 1482, 1483 (D. Kan.1994); Major v. Benton, 647 F.2d 110, 112 (10th Cir.1981). Such a motion "is not a second chance for the losing party to makes its strongest case or to dress up arguments that previously failed." Voelkel, 846 F.Supp. at 1483 (citing OTR Driver at Topeka Frito-Lay, Inc.'s Distrib. Ctr. v. Frito-Lay, Inc., No. 91-4193, 1993 WL 302203, at *1 (D. Kan. July 19, 1993)).

Longman contends that his voluntary decision to withdraw as a paid expert witness on behalf of the Government constitutes "changed circumstances" which triggers a right to seek reconsideration. (Doc. 173, at 3). Since Longman does not allege either a change in controlling law or the need to correct clear error or prevent manifest injustice, presumably he believes that his voluntary act of withdrawal falls within the category of "availability of new evidence."

In both his declaration (Doc.174) and in the present motion and memorandum (Doc's 172, 173), Longman emphasizes that he was never told by the Government or by anyone at HRW that by serving as a paid expert witness he might be required to surrender copies of the underlying witness interviews which supported his expert testimony as well as the chapter he authored in the book *Leave None to Tell the Story*. This fact, however, has no bearing on the question of whether Longman's voluntary withdrawal as a paid expert for the Government

justifies a reconsideration of the court's prior ruling. The issue is whether an expert witness, after seeing an unfavorable ruling on a motion to quash a subpoena for records he relied upon in rendering his expert summary, can then unilaterally create a changed circumstance by voluntarily withdrawing, thus attempting to moot or undo the court's prior ruling.

The court is not convinced that Longman's action in voluntarily withdrawing as a paid expert witness can be characterized as the "availability of new evidence" under the local rule. Moreover, even it this did constitute "new evidence," the court has serious reservations about allowing reconsideration in the situation where the alleged new evidence is nothing more than a change in tactics by a party or expert witness, particularly where the tactic is employed for the express purpose of avoiding a prior ruling of the court on the matter in dispute. This appears much closer to the situation where a party seeks reconsideration as a "second chance" to make arguments not previously raised.

However, the court will proceed to address the merits of the motion for reconsideration rather than deny the motion solely on procedural grounds.

**II.    THE MERITS OF THE MOTION .**

A.    Relevance and Admissibility.

4

Longman first takes the position that the witness interviews sought by Defendant's subpoena are no longer relevant because of his withdrawal as an expert witness and therefore the documents are not properly a subject of a subpoena pursuant to Fed. R. Cr. P. 17(c). Longman correctly notes that the court's opinion refusing to quash the subpoena did find that the documents sought were relevant and admissible under United States v. Nixon, 418 U.S. 683 (1974) for cross-examination of Longman in order to evaluate his expert opinions concerning what happened in Rwanda, even though the interview notes might be considered hearsay. *See* Doc. 164, at 13-25. However, there were other considerations concerning production of the interview notes.

The court noted that Defendant's counsel had identified two individuals listed as trial witnesses by the Government (witnesses G & O) who were previously interviewed by either Longman or other HRW researchers, and Defendant was uncertain whether other individuals interviewed by HRW might be identified as Government witnesses. Doc. 164, at 27 n. 13. In the reply concerning the motion to quash, HRW and Longman had indicated a willingness to "consider production of limited material relating to persons who voluntarily appear as witnesses at trial." (Doc. 152, at 9.) Longman restated this offer in connection with the motion for reconsideration as to witnesses called by the Government at

5

trial as a fact witness. (Doc. 191, at 5 n. 1).[3] The prior interview notes, given approximately 15 years ago and shortly after the relevant events in Rwanda, might be valuable in cross-examination of a trial witness if the witness tells a different story at trial than he told to HRW interviewers.[4] As the court pointed out in its initial memorandum and order, courts have not ruled out all use of subpoenas to obtain impeachment evidence. *See* Doc. 164, at 21, citing United States v. LaRouche Campaign, 841 F.2d 1176, 1180 (1st Cir. 1988) (allowing a Rule 17(c) subpoena for material that is intended for the sole purpose of impeachment of a witness at trial and noting that observation of the "general rule" announced in Nixon about impeachment evidence is left to the sound discretion of the district court). In addition, because the Government has stated that it does not have possession of any of the witness interviews conducted by HRW, Defendant could not rely on the provisions of Fed. R. Cr. P. 26.2 in order to obtain these documents for use in cross-examination after the witness has testified at trial.[5]

---

[3] The offer by HRW/Longman is at best vague as to precisely what information would be produced concerning these witnesses or when it would be produced.

[4] Defendant makes an unsupported statement in its response that indicates that the two individuals identified as Government witnesses have now changed their stories. (Doc. 180, at 3) (Sealed).

[5] The Government has not intervened in, or taken a position, concerning the present motion for reconsideration. As noted in the court's prior order, if there were truly serious concerns about the relevance or admissibility of the documents sought by the

Additional difficulties are present in this case. While the issue is still unresolved, it appears possible that some witnesses may not be willing or legally able to appear in person at trial in the United States, and the parties may need to resort to a deposition of those individuals taken outside the United States. If that procedure is authorized by the court and if such a witness had previously been interviewed by HRW, the interview notes would be needed at the time of the deposition rather than awaiting the testimony of the witness at trial. Therefore, from a practical standpoint, the court cannot sanction further delay in production of the interview notes without risking further requests for continuances in the future.[6]

The Government has represented that this case is the first of its kind in the

---

subpoena, it would seem that these issues would have been raised by the Government. The court can only surmise that the Government may also want access to the HRW interview notes concerning anyone the Government may intend to call as a witness in order to prepare for any attempted impeachment of that witness at trial.

[6] Longman's underlying reason for seeking to prevent disclosure of the interview notes has always been based on a concern that if it becomes known that witnesses have given prior statements to HRW, those witnesses may be the subject of retaliation or harassment. Closely related is HRW's concern that if it becomes known that HRW did not keep the interviews confidential, it may not be able to effectively conduct its investigations in the future. The court will address the manner in which the interview notes may be used and will put in place procedures to prevent the wholesale disclosure of this ruling and the production of the witness interview notes pending further proceedings. As such, the court sees no reason to limit its decision at this time to the production of only those interview notes of known and identified witnesses to be called by the Government as opposed to the interview notes of others who may become witnesses in the future.

United States involving prosecution of individuals allegedly involved in an alleged genocide which took place in Rwanda in the mid-1990's. The difficulties in obtaining testimony from witnesses who are not citizens of the United States and who may be unable or unwilling to come to trial in this case justifies a broad interpretation of Rule 17(c)(1), Fed. R. Cr. P. in order to fully recognize the underlying purpose of the rules which is "to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Cr. P. 2. Therefore, the court concludes that Longman's arguments of lack of relevance and admissibility do not warrant reconsideration of the court's prior decision.

B.  Newsgatherers' Privilege.

While Longman's initial brief in support of reconsideration relied mainly on the Federal Rules of Criminal Procedure, it concluded by stating that the court need not reach the issue of the newsgatherers' privilege, arguing briefly that Longman's withdrawal as a paid expert witness for the Government "abrogated" any possible waiver of the privilege. (Doc. 173, at 6) (Sealed). After Defendant disputed this general proposition, Longman's reply dealt with the newsgatherers' privilege in more detail. (Doc. 191, at 6-8) (Sealed).

In attempting to find support for reconsideration of the court's ruling that

Longman and HRW had waived any privilege, Longman cites a civil case from this court where a party initially designated an individual as a testifying expert witness, but later withdrew that designation stating that the individual would not testify, but would act as a consulting expert. *See* Cooper v. Cockerel, No. 07-2432-GLR, 2009 WL 3053743, at * 2-3 (D. Kan., Sep. 18, 2009). In that case, the court held that a party could convert a person from a testifying expert to a consulting expert, citing Durflinger v. Artiles, 727 F.2d 888, 891 (10th Cir. 1984), thereby denying the opposing party the ability to take the deposition of that individual.[7] Longman cites this case for the proposition that the consulting expert did not waive a claim of work product protection stating that "[t]he waiver of the work product protection did not take effect because Dr. Bailey would not take the witness stand." (Doc. 191, at 10). Clearly that case is factually distinguishable. First, Cooper was a civil action rather than a criminal prosecution, and the decision in that case involved

---

[7] There is no indication that Longman continues to consult with the Government in this case even though he is not going to voluntarily testify and even though the Government has committed not to subpoena him. *See* Doc. 191, at 2 (Sealed). However, as noted in the court's Memorandum and Order, Longman was also consulting with the Government as an expert in another case where he had tendered an expert summary. *See* Doc. 164, at 23 n. 13; Defendant's Ex. D. Also, Longman has already testified for another government in a criminal case against Francois Bazaramba, an alleged close friend and neighbor of Defendant. *See* Doc. 164, at 20 n. 10. Therefore, while Longman may have voluntarily withdrawn as a testifying expert in this case, he has been, and may still be, involved, either directly or indirectly, in the prosecution of individuals such as Defendant whom he believes may have been involved in the Rwandan genocide in the mid 1990's.

interpretation of a specific rule of civil procedure. Longman cites no similar criminal rule that is applicable in this case. Second, in Cooper, it was the party who retained the expert that changed the designation of the expert. The court in Cooper noted that its ruling protected the party from disclosure of its pretrial investigation. Here, the expert rather than the Government has unilaterally and voluntarily withdrawn for the sole purpose of preventing compliance with Defendant's subpoena to him which had been sustained by the court's earlier order.[8] The Government has not claimed that disclosure of the witness interviews conducted by Longman would unduly disclose the Government's pretrial investigation.

Regardless of whether Longman claims that the waiver of the privilege has been "abrogated" by his withdrawal, or alternatively claims that his wavier "did not take effect because he would not take the witness stand," neither argument justifies reconsideration of the court's conclusion that both Longman and HRW have waived any possible claim to the newsgatherers' privilege. Once waived, the privilege cannot be reinstated retroactively simply because Longman has

---

[8] In fact, it appears that Longman's withdrawal was not instigated or condoned by the Government since they initially indicated that the Government might subpoena Longman as a witness. Also, Longman's withdrawal caused the Government to seek a continuance in the trial of this case which had been set in October, 2009, in order to obtain the services of another expert witness.

voluntarily decided not to serve as an expert witness at trial. The motion for reconsideration is therefore denied on this basis also.

### III. CONTINUED SEALING OF PLEADINGS.

In its Memorandum and Order filed May 21, 2010, the court ordered that the Memorandum and Order be temporarily sealed pending briefs from any affected party concerning whether any portions of the Memorandum and Order should be sealed and/or redacted before being placed in the public record. (Doc. 164, at 45.) Subsequently, pleadings were filed by the Government (Doc. 166-1) and by HRW/Longman (Doc. 170) concerning whether any portions of the Memorandum and Order should be sealed.

The Government requested that Exhibits A, B and D attached to the Memorandum and Order remain under seal, along with any discussion of those exhibits in the Memorandum and Order, including specifically discussion at pages 23-24 and n. 12 in the Memorandum and Order. (Doc. 166-1, at 1-2.) These exhibits contained the names of individuals who had provided information to HRW and/or information concerning another ongoing investigation by the Government.

HRW and Longman requested that the entire Memorandum and Order filed May 21, 2010 be kept under seal until entry of judgment, further briefing at that

time, and further order of the court. (Doc. 170, at 2.) Two reasons for this request were given: (1) Dr. Longman had decided to withdraw as an expert witness; and (2) even if the court adheres to its initial order concerning production of the interview notes, "retaining the May 20 Order[9] under seal until entry of judgment would provide at least some measure of protection to HRW's confidential sources, and to HRW itself." (Doc. 170, at 2.) As to the second reason, HRW and Longman noted that:

> If the May 20 Order remains in effect, defendant's counsel will have access to the identity of HRW's sources. That will enable defendant's counsel to seek to interview those sources, and conduct any investigation relating to the veracity of those sources. However there is an enormous difference between (1) a person being approached by defendant's counsel, and (2) it becoming generally known in Rwanda (and specifically in the Nyakizu commune) that the person was being approached (or inquired about) because he or she had been a source for information that was contained in HRW's report, *Leave None to Tell the Story*. It is the latter information that increases the prospect that the person approached (or inquired about) by defendant's counsel would be subject to retaliation.
>
> At the May 11, 2010 hearing in this matter, Kurt P. Kerns, Esq., counsel to defendant Kobagaya,

---

[9] The court's prior Memorandum and Order was dated May 20, 2010, but was filed on May 21, 2010. Longman's reference to the "May 20 Order" relates to the Memorandum and Order filed as Docket No. 164.

> acknowledged this critical difference, and stated that he
> would not advise such persons that he had learned their
> names from HRW's confidential notes.

(Doc. 170, at 1-2.)

Defendant made no specific request that any particular portion of the Memorandum and Order of May 21, 2010 be kept under seal. However, in the reply to the motion for reconsideration, defendant's counsel acknowledged that the defense was not insensitive to the concerns of HRW, and again stated that "[t]he defense is willing to not disclose the source of the information or the information itself to anyone outside the defense team." (Doc. 180, at 4.) Counsel continued by noting that at the time of trial there are additional safeguards that can potentially be implemented to protect the safety of witnesses including such things as sealing or redacting transcripts, with unredacted versions released only to the parties in the case. (Doc. 180, at 5.)

After considering the positions of all the parties, the court concludes that under the unusual circumstances of this case, the Memorandum and Order filed May 21, 2010 (Doc. 164) should remain sealed pending further order of the court. Likewise, all briefs and declarations concerning that motion which were originally filed under seal, and all briefs and declarations concerning the subject motion for

reconsideration which were originally filed under seal, shall remain under seal pending further order of the court. The court may reconsider this matter either on motion of an affected party or by the court *sua sponte*, either before or after the trial in this case.

**IV. RESTRICTIONS ON USE OF DOCUMENTS OBTAINED THROUGH SUBPOENA.**

The parties discussion concerning continued sealing of the Memorandum and Order filed May 21, 2010, also touched upon some of the agreed restrictions that should be imposed upon the use of any materials produced by HRW/Longman pursuant to Defendant's subpoena in this case. However, in order to avoid any confusion during the pretrial preparation in this case, the court will formally impose the following restrictions on use of any materials produced by HRW/Longman pursuant to Defendant's subpoena in this case:

a. Any counsel for a party receiving copies of the subpoenaed documents shall make no more than one additional copy of those materials, and all copies of the subpoenaed documents shall remain in the sole possession of counsel;

b. It appears that some of the document produced pursuant to the subpoena are not in English and thus may need to be translated into

English, and in that event counsel may make an additional copy of the portion of the documents to be translated and provide those to an appropriate interpreter; provided however, that counsel shall advise the interpreter of the restrictions imposed on such documents by this Memorandum and Order, and prior to delivery of the document(s) for translation shall obtain a signed acknowledgment by the interpreter that the interpreter will keep the copy of the document in a secure location, will not provide any copies of the documents to any other person, and will not disclose the substance of the documents to any other person;

c. While counsel may share the information contained in the subpoenaed documents with their client and with any expert witness employed by that party, counsel will not provide copies of the subpoenaed documents, in hard-copy format or in electronic reproduction, to their client or any expert witness or to any other persons or organizations;

d. Any counsel who seeks to informally interview (*i.e.*, by any means other than a formal, court-authorized deposition) an individual who gave an prior interview to HRW for which the prior interview notes have been produced pursuant to order of the court, shall refrain from

disclosing to the interviewee the fact that counsel obtained the interviewee's name from HRW, and shall refrain from disclosing to the interviewee the fact that counsel has obtained a copy of any notes of a prior interview given by the interviewee to HRW;

e. No counsel will take copies of the subpoenaed documents, whether in the initial hard-copy format or in any electronic reproduction of the documents, outside of the continental United States, except as follows:

    1. If the deposition of a person listed as a trial witness is to be taken outside the continental United States with the approval of the court, either counsel may take to that deposition not more than two copies of the subpoenaed interview notes of that witness taken by HRW researchers; and

    2. If the interview notes are used as an exhibit during the deposition, the witness must be told that the notes were obtained by subpoena and by order of the court over the objection of HRW, and the exhibit shall be sealed along with any discussion of the exhibit, pending further order of the court.

The above restrictions may be modified upon motion of an affected party or by the court *sua sponte*. The restrictions are to apply to pretrial preparation and are not intended to govern use of the subpoenaed material at trial. Use of the subpoenaed material at trial shall be determined by the assigned trial judge.

The court believes that the above restrictions on use of the documents produced by HRW/Longman will reasonably protect any witnesses from harassment or retaliation and will further effectuate HRW's interests in protecting the confidentiality of its sources as to any future investigations it may conduct.

### V.     STAY OF PRODUCTION TO DEFENDANT

Pursuant to prior order of the court, HRW and Longman have produced to the undersigned magistrate judge *in camera* the documents they contend comply with the subpoena issued by defendant. These documents were Bates Stamped with numbers 0000151-292, 300-443. In producing these documents, HRW and Longman requested that their counsel be given sufficient notice of any dissemination of these documents to Mr. Kobagaya's counsel in order to allow them to pursue appeals to the assigned U.S. District Judge and, if necessary, to the U.S. Court of Appeals for the Tenth Circuit. *See* Letter of June 25, 2010, from Jerome T. Wolf to the undersigned magistrate judge.

Accordingly, the undersigned magistrate judge will not produce these documents to defendant's counsel until October 1, 2010, and will not entertain any motions to stay implementation of this order. This delayed date of delivery will give counsel for HRW and Longman an opportunity to seek review of the Memorandum and Order filed May 21, 2010, and of this Memorandum and Order concerning reconsideration, by the assigned U.S. District Judge. Absent an order from the assigned U.S. District Judge, the documents will be produced to defendant's counsel pursuant to the restrictions in this Memorandum and Order on October 1, 2010.

**CONCLUSION**

For the reasons set out above, the Motion of Third Parties Human Rights Watch and Dr. Timothy Longman for Reconsideration of the Issue Addressed in This Court's May 20, 2010 Memorandum and Order (Doc. 172) is hereby DENIED;

IT IS FURTHER ORDERED that the documents previously produced by HRW and Longman to the undersigned magistrate judge *in camera* shall be delivered to counsel for defendant, Lazare Kobagaya, on October 1, 2010, unless this order has been stayed by the assigned U.S. District Judge;

IT IS FURTHER ORDERED that any use of the documents produced by

HRW and Longman pursuant to defendant's subpoena and the court's orders are hereby restricted as set out in this Memorandum and Order.

IT IS SO ORDERED.

Dated this 22nd day of September, 2010 at Wichita, Kansas.

    s/  DONALD W. BOSTWICK
    Donald W. Bostwick
    United States Magistrate Judge