# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LAZARE KOBAGAYA, ) <br> ) <br> Defendant. ) <br> _____) | **CRIMINAL ACTION** <br><br> No. 09-10005-01 |

## **MEMORANDUM AND ORDER**

Before the court are the following:

1. Human Rights Watch and Timothy Longman Application for Stay of Magistrate Judge Bostwick's Memorandum and Order on Motion for Reconsideration (Doc. 211);

2. Objections of Human Rights Watch and Timothy Longman to Magistrate Judge Bostwick's Orders on Motion to Quash and on Motion for Reconsideration (Doc. 212);

3. Government's Motion for Reciprocal Access to Documents and Materials Received by Defendant Pursuant to Subpoenas (Doc. 215);

4. Defendant's Response in Opposition to Third Party Application for Stay of Order (Doc. 216);

5. Defendant's Response to HRW and Professor Longman's Objections and Their Request for Modification of Judge Bostwick's protective order (Doc. 217); and

6. Human Rights Watch and Timothy Longman's Reply (Doc. 220).

## Introduction

Defendant is charged by indictment filed January 13, 2009 with violations of 18 U.S.C. §§ 1425(a) and 1546(a). This is represented to be the first (and perhaps only) such case in the United States involving the genocide which occurred in Rwanda in 1994. The substance of the indictment is that defendant "participated" in the genocide and then made false statements in connection with his

application for citizenship. The citizenship application and statements on which the indictment is based were made in December 2005 and April 2006.

Defendant was born in December 1928. He soon will be 82 years old. The case has been specially set for trial in April 2011 and is anticipated to last as long as eight weeks. At the trial, defendant will be held to answer not just for events which occurred in 2005 and 2006 but, as a practical matter, also for events which took place some 17 years earlier, <u>in</u> <u>Africa</u>, more specifically in an African country which probably will not be a household word to some or all of the persons who ultimately will serve on the jury and who will not recall the genocide (if they even were aware of it in the first place). In contrast, the Nuremberg War Crimes trials were held from 1945 to 1949 and concerned events occurring between 1939 and 1945 which were fresh in the minds of the majority of persons in the civilized world.

Two things have become obvious as the case has progressed: first, many of the key witnesses, whether they be for the government or the defendant, must have been in Rwanda in 1994 and are still there or in other foreign countries. Second, for the jurors to understand the case, there will need to be some evidence regarding what occurred in Rwanda in 1994. To this end, the court and counsel agreed that expert testimony will be necessary which, as Judge Bostwick noted, will be limited to background discussion of the events in Rwanda and, in particular, what occurred in and around the Nyakizu compound, where the underlying crimes allegedly took place. (Doc. 164 at 8).

The government initially retained as its expert Professor Timothy Longman who, in conjunction with Human Rights Watch, helped write a

-2-

book about the genocide. This past March, defendant's counsel served a Fed. R. Crim. P. 17(c) subpoena[1] on Longman, which started a flurry of motion practice which culminated in Judge Bostwick's Memorandum and Order of May 21, 2010 in which he rejected Longman and HRW's motion to quash the subpoena. Soon thereafter, Longman backed out of his agreement to be the government's Rwanda expert, ostensibly because to do so might or would cause him to renege on promises of confidentiality he had made to persons he interviewed for the book.[2] Longman and HRW believed that Longman's withdrawal was a "changed

---

[1] The subpoena was issued pursuant to an order of this court (Doc. 121) and directed Longman to produce:
1) Research conducted by Dr. Timothy Longman and others affiliated in whole or in part with Human Rights Watch in connection with the production and publication of <u>Leave None to Tell the Story</u>, specifically the chapter(s) on Nyakizu, Rwanda. Research may include but is not limited to unredacted copies of notes, reports, interviews, and any document gathered or collected from any source in connection to the chapter on Nyakizu. 2) Identification and production of any additional material relied upon in formulating Dr. Longman's expert opinion in <u>United States v. Kobagaya</u>.

[2] In a declaration (Doc. 174) Longman represented that "When I agreed to serve as an expert witness, I was unaware, and the United States did not advise me, that my participation could result in the compelled production of Human Rights Watch's confidential research notes for" the book. The government has not rebutted or commented on this representation so the court accepts it. Nevertheless, to avoid future problems (and delays), counsel are admonished to explain to their expert witnesses the rules, procedures and applicable case law pertaining to expert testimony.

They also must explain that this case does not call for a "battle of the experts." See, for example, Longman's rebuttal declaration filed in conjunction with the government's motion to exclude the testimony of Allan Stam, defendant's designated Rwanda expert (Doc. 115). Longman criticizes one of Stam's conclusions as based on "faulty logic through a deceptive exploitation of statistics" (Doc. 115-2 at 6). Whether the number of persons killed in the genocide was 500,000 or 800,000 or some other number is not an issue the jury will have to decide, so dueling expert testimony on that or similar points will not help the jury and will not be permitted.

circumstance" which resolved the situation and asked Judge Bostwick to reconsider his order. Judge Bostwick did reconsider, even though he believed (as does this court) that the motion was not a proper motion for reconsideration. In a Memorandum and Order filed September 22, 2010 (Doc. 207), Judge Bostwick denied the motion.

Longman and HRW now object to Judge Bostwick's rulings. Defendant has made a persuasive argument that the standard of review should be clearly erroneous or contrary to law pursuant to Fed. R. Crim P. 59(a). (Doc. 217). In order to avoid another disputed issue, the court has made the de novo review mandated by Rule 59(b)(3). The court has reviewed every submission considered by Judge Bostwick. In addition, the court has reviewed substantial portions of the subpoenaed documents which are in English. (The court cannot read the documents which are written in French.)

### Substantive Rulings

### Fed. R. Crim P. 17

Longman and HRW object to Judge Bostwick's rulings regarding the application of Rule 17. They assert that Judge Bostwick's initial order was grounded upon the subpoenaed documents' potential use to impeach Longman and that Longman's withdrawal moots that potential use. They argue that to the extent the documents might still be used to impeach other witnesses, their production is premature and, in effect, amounts to pretrial discovery impermissible under Rule 17.

Rule 17 provides in relevant part:

(c) Producing Documents and Objects

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court

-4-

> may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

But there is another equally applicable rule. Fed. R. Crim. P. 2 provides:

> Interpretation
>
> These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.

As they have throughout, Longman and HRW rely upon <u>United States v. Nixon</u>, 418 U.S. 683 (1974) to support their Rule 17 arguments. Judge Bostwick thoroughly considered and discussed <u>Nixon's</u> application to this case in his orders (Doc. 164 at 11-29, Doc. 207 at 4-8) and the court is not persuaded by HRW and Longman's criticisms of Judge Bostwick's analysis. In addition, <u>Nixon</u> makes clear that a court has discretion in its application of the Rule's requirements to each particular case, an important aspect of the decision HRW and Longman fail to acknowledge:

> Enforcement of a pretrial subpoena <u>duces tecum</u> must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c). See, <u>e.g.</u>, <u>Sue v. Chicago Transit Authority</u>, 279 F.2d 416, 419 (CA7 1960); <u>Shotkin v. Nelson</u>, 146 F.2d 402 (CA10 1944).

<u>Id.</u> at 702. It seems obvious that discretion can be applied to the factors listed in <u>Nixon</u>, factors to which Judge Bostwick devoted more than twenty pages of analysis in his orders.

-5-

Longman and HRW's fall back argument seems to be that Rule 17's language "produce the designated items in court before trial or before they are to be offered in evidence" means production at or immediately before the commencement of the trial. In many cases, that method would be adequate. But not in this case.

Because this case is expected to take as long as two months, it will be necessary to send written questionnaires to ascertain potential jurors' availability for a such long trial. This procedure (which this court used earlier this year in another eight-week criminal trial and has employed in other cases) is initiated several weeks before trial, is labor intensive and time consuming but, done correctly, streamlines jury selection. The end result of this process is assurance that those persons who appear for jury selection and who ultimately are selected as jurors will be available throughout the trial and that the court and counsel can plan their schedules accordingly. Any sort of last-minute delay or schedule change simply is unacceptable because it requires the whole process to be started over.

The trial date was set in April 2011 for several reasons, a principal one being that many witnesses for both sides will have to come or be brought to the United States from Africa and perhaps other countries. This requires considerable pre-planning. Most, if not all, of the witnesses will have no right to enter or remain in the United States other than as witnesses in this case and will be expected to return to their home countries after they have testified. Some of the witnesses may have criminal records stemming from their participation in the Rwanda genocide.

While the court has reviewed some of the Longman/HRW documents it is in no position to say whether the documents contain relevant information. Only counsel have that ability. What Longman and HRW do not acknowledge, but surely must admit, is that if there is relevant and/or exculpatory material in the documents, the government will be required to disclose it and, of course, the defendant will possess rights of Constitutional significance to its use. But there are also practical considerations and consequences if, as Longman and HRW propose, the documents are not disclosed until trial.

For example, if the Longman/HRW documents reveal the identity of an important witness for either side, the witness cannot be subpoenaed if he or she is in Africa or another foreign country. Locating witnesses in Rwanda or another African country is not easy (Longman and HRW presumably know this). Even if the witness can be located, securing his or her presence in the United States can be problematic and time-consuming. If the witness will not or cannot enter the United States, the only other option is a deposition. Longman and HRW mention a deposition in their pleading (Doc. 212 at 10) but it is readily apparent that they have no idea of the process involved to secure the deposition when the prospective witness is in a foreign country, not to mention Rwanda.

Should these or other unforseen events occur because of the late disclosure of the documents, the court will be faced with problems which rarely arise in criminal cases and almost never in civil cases. Does the court continue or interrupt the case so that a crucial defense witness can be brought to the United States or so that counsel can travel to Africa to take the witness' deposition? Does the court

refuse to do so, thereby risking reversal?  What about the jurors who have been specially selected because of their availability for this trial but who are not available in the event of a continuance?  What becomes of the other witnesses, many of whom have come from Africa just for the trial, some of whom may have been involved in the Rwanda genocide?  These are not matters of speculation.  They are the subject of ongoing discussions between the court, counsel and officials of the U.S. Marshal's service and immigration authorities.

The court is not unmindful or insensitive about Longman and HRW's persistent concern that release of the documents could endanger persons who spoke with Longman prior to 1999 when he was working on the book.  But the court finds them to be overstated and speculative.  Judge Bostwick's restrictions speak to their concern.  Additionally, both government and defense counsel, as well as their investigators, have made many recent trips to Rwanda and other African countries to locate and interview potential witnesses.  There have been no reports that anyone has been threatened, assaulted or killed as a result of this activity.

The court has reviewed Judge Bostwick's careful and thorough consideration of the Rule 17 issue and finds no error in his analysis.  It must be remembered that defendant's rights under the Constitution must prevail over Longman and HRW's arguments pertaining to Rule 17 and the documents.

### Newsgatherers' Privilege

Longman and HRW also object to Judge Bostwick's ruling that, to the extent they enjoy the newsgatherers' privilege, it was waived when Longman agreed to become a paid expert for the government and the

privilege was not revived when Longman withdrew as the government's expert. The only additional case they cite is <u>Cooper v. Ciccarelli</u>, No. 07-2434-GLR, 2009 WL 3053743, at *2-3, (D. Kan. Sept. 18, 2009).[3] Despite Judge Bostwick's clear invitation (Doc. 164 at 35 n.18), Longman and HRW have <u>never</u> cited a case, civil or criminal, involving a claim of privilege by a person appearing voluntarily at trial as an expert witness for one of the parties, much less a case holding or even suggesting that a witness may revive the privilege merely by withdrawing as a witness, expert or otherwise.

In the absence of applicable authority or persuasive argument, the court rejects Longman and HRW's objection to Judge Bostwick's ruling regarding the newsgatherers' privilege.

<u>Procedural Rulings</u>

In his September 22, 2010 order, Judge Bostwick made rulings regarding (1) the continued sealing of pleadings and orders and (2) use of the documents obtained by defendants' subpoena, which now are residing in this court's chambers (Doc. 207 and his email of September 30, 2010). Judge Bostwick's restrictions on use are appended hereto. Longman and HRW propose the following modification in the event this court overrules their objections:

> Accordingly, HRW suggests as an alternative to quashing the subpoenas in their entirety, that only those interview notes and documents be produced that pertain to persons who have been identified independently of the HRW materials by the defense or the government as witnesses in this case to be called at trial or deposed. As the documents are in Magistrate Judge Bostwick's custody, HRW

---

[3]<u>Cooper v. Ciccarelli</u> appears to be the same case as <u>Cooper v. Cockerel</u>, No. 07-2432-GLR, 2009 WL 3053743, at *2-3 (D. Kan. Sept. 18, 2009) which Judge Bostwick discussed and distinguished in his September 22, 2010 order (Doc 207 at 8-11).

> further suggests that such disclosure of documents be
> limited to only those documents that relate to individuals
> on the parties' lists of witnesses to be called at trial
> that are filed with the Court or those individuals for
> which the Court grants a Fed. R. Crim. P. 15 deposition.
> This would avoid improper use of HRW's confidential
> materials for pure discovery, and would provide maximum
> protection for innocent strangers to this proceeding while
> still advancing the fair administration of justice that the
> Orders seek. HRW will work with the Court to provide lists
> of names indexed to the relevant pages of documents held in
> camera in order to reduce any burden on the Court.
>
> While HRW appreciates the Court's concern regarding
> duplication of the documents and the Court's current
> instructions that counsel may only make one copy of the
> documents, HRW further requests that if documents are to be
> produced, the parties be prohibited from scanning or
> otherwise making electronic copies of the documents. Once
> an electronic copy is produced, dissemination of the
> confidential information can be difficult to track and
> control. By limiting any duplication to only photocopies,
> HRW and the Court can more closely monitor the breadth of
> any distribution of the documents. Finally, HRW requests
> that upon the conclusion of the case, the parties return
> any documents produced and copies made to HRW.

(Doc. 212 at 7-8).

The court agrees with the proposed modification regarding electronic copying, which must be pre-authorized by order of this court or by Judge Bostwick. Judge Bostwick's restrictions are modified only in that respect.

The modification proposed in the first paragraph is unworkable for the reasons previously stated and because final witness lists have not been filed nor has the court ruled on whether depositions of witnesses can be taken. Indeed, as pointed out in defendant's most recent filings (Docs. 216, 217) time is of the essence and defendant's lead counsel is awaiting resolution of this matter before making a last trip to Africa.

<u>Conclusion</u>

-10-

Longman and HRW's objections to Judge Bostwick's orders are overruled. Judge Bostwick's Memorandum and Order of May 21, 2010 (Doc. 164, as redacted) is unsealed, <u>with the exception</u> of exhibits referred to therein, which shall remain sealed. Judge Bostwick's Memorandum and Order of September 22, 2010 (Doc. 207) is unsealed, as well. Longman and HRW's application for stay (Doc. 211) is overruled. Any further delay in disclosure of the documents will prejudice the order of progress of this unique case. The government's motion for reciprocal access (Doc. 215) is granted.

IT IS SO ORDERED.

Dated this <u>  15th  </u> day of October 2010, at Wichita, Kansas.

<u>s/ Monti Belot            </u><br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE

RESTRICTIONS ON USE OF DOCUMENTS OBTAINED THROUGH SUBPOENA

The parties discussion concerning continued sealing of the Memorandum and Order filed May 21, 2010, also touched upon some of the agreed restrictions that should be imposed upon the use of any materials produced by HRW/Longman pursuant to Defendant's subpoena in this case. However, in order to avoid any confusion during the pretrial preparation in this case, the court will formally impose the following restrictions on use of any materials produced by HRW/Longman pursuant to Defendant's subpoena in this case:

a. Any counsel for a party receiving copies of the subpoenaed documents shall make no more than one additional copy of those materials, and all copies of the subpoenaed documents shall remain in the sole possession of counsel;

b. It appears that some of the document produced pursuant to the subpoena are not in English and thus may need to be translated into English, and in that event counsel may make an additional copy of the portion of the documents to be translated and provide those to an appropriate interpreter; provided however, that counsel shall advise the interpreter of the restrictions imposed on such documents by this Memorandum and Order, and prior to delivery of the document(s) for translation shall obtain a signed acknowledgment by the interpreter that the interpreter will keep the copy of the document in a secure location, will not provide any copies of the documents to any other person, and will not disclose the substance of the documents to any other person;

c. While counsel may share the information contained in the subpoenaed documents with their client and with any expert witness employed by that party, counsel will not provide copies of the subpoenaed documents, in hard-copy format or in electronic reproduction, to their client or any expert witness or to any other persons or organizations;

d. Any counsel who seeks to informally interview (i.e., by any means other than a formal, court-authorized deposition) an individual who gave an prior interview to HRW for which the prior interview notes have been produced pursuant to order of the court, shall refrain from disclosing to the interviewee the fact that counsel obtained the interviewee's name from HRW, and shall refrain from disclosing to the interviewee the fact that counsel has obtained a copy of any notes of a prior interview given by the interviewee to HRW;

e. No counsel will take copies of the subpoenaed documents, whether in the initial hard-copy format or in any electronic reproduction of the documents, outside of the continental United States, except as follows:

1. If the deposition of a person listed as a trial witness is to be taken outside the continental United States with the approval of the court, either counsel may take to that deposition not more than

two copies of the subpoenaed interview notes of that witness taken by HRW researchers; and

     2. If the interview notes are used as an exhibit during the deposition, the witness must be told that the notes were obtained by subpoena and by order of the court over the objection of HRW, and the exhibit shall be sealed along with any discussion of the exhibit, pending further order of the court.