IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| v. | ) | No. 09-10005-01 |
| LAZARE KOBAGAYA, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendant Lazare Kobagaya's motion to dismiss the indictment. (Doc. 278) The motion has been fully briefed and is ripe for decision. (Docs. 293, 306). The motion to dismiss is denied for the reasons herein.

**I.   BACKGROUND**

Defendant is charged by indictment filed January 13, 2009 with violations of 18 U.S.C. §§ 1425(a) and 1546(a). The substance of the indictment is that defendant "participated" in the genocide which occurred in Rwanda in 1994 and then made false statements in connection with his application for citizenship. The citizenship application and statements on which the indictment is based were made in December 2005 and April 2006.

The case has been specially set for trial in April 2011 and is anticipated to last eight to ten weeks. At the trial, defendant will be held to answer not just for events which occurred in 2005 and 2006 but, as a practical matter, also for events which took place some 17 years earlier, in Africa. The government and defendant have indicated that approximately 50 African witnesses will testify to those events.

These witnesses were presumably all interviewed in Africa. The subject of the motion before the court is the payments made to the government witnesses. Defendant asserts that the government improperly paid witnesses by supplying them with a daily stipend, food payments, witness fees, transportation fees, cell phones and hotel lodgings. Defendant contends that these improper payments have damaged defendant's right to due process and a fair trial and the case therefore must be dismissed.

**II.   Analysis**

The government primarily relies on 28 U.S.C. § 1821 and 28 C.F.R. 21.1 and 21.4 to support the payments to witnesses.

28 U.S.C. § 1821 states

> (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.
>
> (2) As used in this section, the term "court of the United States" includes, in addition to the courts listed in section 451 of this title, any court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States.
>
> (b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.
>
> (c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

  (2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

  (3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses.

  (4) All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title.

  (d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

  (2) A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

  (3) A subsistence allowance for a witness attending in an area designated by the Administrator of General Services as a high-cost area shall be paid in an amount not to exceed the maximum actual subsistence allowance prescribed by the Administrator, pursuant to section 5702(c)(B) of title 5, for official travel in such area by employees of the Federal Government.

28 C.F.R. 21.4 provides the fees and allowances of fact witnesses when a witness attends a "judicial proceeding." A "judicial proceeding" is defined in 28 C.F.R. 21.1(c) as

  Any action or suit, including any condemnation, preliminary, informational or other proceeding of a judicial nature. Examples of the latter include, but are not limited to, hearings and conferences before a committing court, magistrate, or commission, grand jury proceedings, pre-trial conferences, depositions, and

>coroners' inquests. It does not include information or investigative proceedings conducted by a prosecuting attorney for the purpose of determining whether an information or charge should be made in a particular case. The judicial proceeding may be in the District of Columbia, a State, or a territory or possession of the United States including the Commonwealth of Puerto Rico or the Trust Territory of the Pacific Islands.

The regulation further defines pre-trial conferences as a "conference between the Government Attorney and a witness to discuss the witness' testimony. The conference must take place after a trial, hearing or grand jury proceeding has been scheduled but prior to the witness' actual appearance at the proceeding." 28 C.F.R. 21.1(d).

The government has classified the interviews with witnesses as falling under the pre-trial conference definition and, therefore, triggering payments and reimbursement under the statute and regulations. Defendant asserts that the "Department of Justice has overstepped its authority in promulgating a regulation that gives it the upper hand in dealing with witnesses before trial" and therefore the court should disregard the regulation and find the payments improper. (Doc. 278 at 25).

In his motion, defendant cites two Tenth Circuit cases to support his position that payment of witnesses fall outside the realm of protected prosecutorial activities. In <u>United States v. Singleton</u>, 165 F.3d 1297 (10th Cir. 1999), the court sitting en banc reversed an earlier decision by a panel and held that the anti-gratuity statute, 18 U.S.C. § 201(c), was not violated when a prosecutor granted a witness leniency for testimony. The court reasoned that the anti-gratuity statute did not apply to United States Attorneys because they were acting as representatives of the United States. The court

further held that the statute would only apply if a prosecutor "step[ped] beyond the limits of his or her office to make an offer to a witness other than one traditionally exercised." Singleton, 165 F.3d at 1302.

After Singleton, the Tenth Circuit was confronted with the question of whether a United States Attorney could violate the anti-gratuity statute by paying a confidential informant in United States v. Jackson, 213 F.3d 1269 (10th Cir. 2000), *vacated on other grounds*, 531 U.S. 1033, 121 S. Ct. 621, 148 L. Ed.2d 531 (2000). In Jackson, the court held that a prosecutor does not violate the anti-gratuity statute unless he "promised the witness 'something of value' in exchange for the testimony, and that by making such a promise, the government stepped out of the shoes of the sovereign- i.e., the government made a promise of something of value not normally offered and this action was inconsistent with the role of the prosecutor." 213 F.3d at 1289.[1] The court ultimately held that payment for investigative services and expenses was "a long-established practice and cannot constitute a violation of the bribery statute even if the parties contemplated testimony by the paid informant." Id. The court did not determine whether any other payments were a violation of the anti-gratuity act because the defendant did not show that the witness was paid an additional amount for her actual testimony. In this case,

---

[1] Jackson requires a defendant to make a prima facie case of a violation of section 201(c)(2) by establishing "(1) the Government promised something of value in exchange for witness testimony; (2) the promise was one not normally made in exchange for testimony; and (3) this action is inconsistent with the role of a prosecutor." United States v. Rodriguez-Aguirre, No. 00-2382, 2002 WL 182117, *4 (10th Cir. Feb. 6, 2002). Defendant has not made a sufficient showing.

-5-

defendant has established that the witnesses were paid for expenses and a daily fee which is authorized under the DOJ's regulations. Therefore, defendant has failed to show that the government's actions is this case is an offer for something that is not normally offered and inconsistent with the regular role of the prosecutor.

Defendant also cites United States v. Rodriquez-Aquirre, No. 00-2382, 2002 WL 182117, *4 (10th Cir. Feb. 6, 2002). In Rodriquez-Aquirre, the court discussed a witness who entered the witness protection program and was paid $80,000 for her testimony. The court held that the government's payments to the witness did not violate the anti-gratuity statute because there was authority for payments to individuals in the witness protection program and defendant could not show that the government's actions were inconsistent, citing to Jackson.

In his motion, defendant does not attempt to show that the government has made a promise of something not normally offered. Rather, the language of the regulation evidences that witnesses are regularly paid a witness fee for meeting with a government attorney prior to a court proceeding. Therefore, the prosecutor in this case could not be stepping beyond the bounds of protected conduct.

Clearly, Congress has given the agency authority to promulgate regulations to run the DOJ. See 5 U.S.C. § 301. The DOJ cited this provision, along with the fees provisions, as authority for the regulations at issue.[2] It is entirely reasonable to compensate a

---

[2] In United States v. LaFuente, 991 F.2d 1406, 1412-13 (8th Cir. 1993), the only case the court discovered that directly cited the pre-trial conference provision, the Eighth Circuit stated that the regulation "permits the government to pay witness fees to

witness for time and expenses in meeting with a government attorney to prepare for trial as long as the amounts paid are reasonable.[3]  The court finds that the regulations, while not expressly allowed by section 1821, are practical and reasonable and within the scope of the DOJ's authority.

Even if the court were to find that the regulations were improper and outside the authority of the DOJ, the court would not conclude that dismissal was warranted.  Dismissal is a severe sanction and only necessary in egregious circumstances.  <u>United States v. Cano-Silva</u>, 402 F.3d 1031, 1035 (10th Cir. 2005).

The court will now turn to the specific arguments made by defendant regarding fees paid by the government to witnesses.  It is important to keep in mind that this is a very out-of-the-ordinary, if not unique, case and that the payments about which defendant objects took place in that context and in Africa.  The court also observes that because of the unusual nature of this case, defendant has been provided, at taxpayer expense, with two counsel plus assistants and

---

nongovernment employees for appearing at pretrial conferences," but the court did not apply the regulation in that case because it was not in effect at the time the government had paid the fees to its witnesses.

[3] This court has held in a civil case that a witness can be compensated for the time spent preparing to testify.  <u>See</u> <u>Centennial Mgmt. Servs., Inc. v. Axa Re Vie</u>, 193 F.R.D. 671, 679-80 (D. Kan. 2000) (citing ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 96-402 (1996) ("ABA Ethics Op. 96-402") ("The Committee also sees no reason to draw a distinction between (a) compensating a witness for time spent in actually attending a deposition or a trial and (b) compensating the witness for time spent in pretrial interviews with the lawyer in preparation for testifying .... The Committee is further of the view that the witness may also be compensated for time spent in reviewing and researching records that are germane to his or her testimony, provided, of course, that such compensation is not barred by local law.")

investigators, all for the purpose of insuring that he will receive the best possible defense.

### A. Attendance Fees

Defendant asserts that the witness fees paid for a trip in September 2010 were not allowed because the government took the witnesses to various locations and were not at one specified location. This argument does not have merit. It is entirely conceivable that there would be a need to meet with the government attorney in different locations on one particular day.

Next, defendant asserts that the fees were not allowed on certain occasions because there was no government attorney present and that the amounts paid varied without an explanation. The government responds that witnesses only received fees if an attorney was present and that the witness fee was dependent on the amount of time spent with witnesses. The government's explanation is adequate. The government has satisfied its obligation by providing the information to defendant. Even if the court concluded that any of the payments were improper, defendant has not provided the court with any authority which would mandate dismissal of this case.

### B. Pre-Indictment Payments, Medical Expenses and Cell Phones

Prior to the indictment, the government met with witnesses on two separate occasions. In March 2008, the government met with 32 witnesses in Butare, Rwanda. The government transported the witnesses to the interviews and provided them with 2000 Rwandan francs for food, which is equivalent to $3.60. In September 2008, the government provided food and lodging to two witnesses, but terminated the trip prematurely due to illness of a government agent. The witnesses were

not interviewed.

The government asserts that these payments are proper and that any other finding would "lead to the counterintuitive and counterproductive end of forcing potential government witnesses to pay their own travel and subsistence costs associated with voluntary meetings." (Doc. 293 at 12-13). The court agrees. In Wilkins v. Clary, No. 01-795 2005 WL 1705211, *11 (E.D. Va. July 5, 2005), the defendant asserted that his conviction should be overturned because the government had paid witnesses who testified in the grand jury proceedings. The payments were for food and lodging during the investigation. The court found that the payments were "standard procedure and hardly the 'stuff' of bribery." Id. As in Wilkins, the government has disclosed the amounts spent and they are reasonable. Even though the regulations do not provide authority for these reimbursements, they are not excessive and were paid during the investigation.

Defendant also contends that the provision of cell phones and medical care to one witness is not allowed by the statute and would fall under the provisions of the anti-gratuity statute, 18 U.S.C. § 201(c). In United States v. Dawson, 425 F.3d 389 (7th Cir. 2005), the Seventh Circuit observed that although paying witnesses for their testimony (beyond the fees permitted) is forbidden, a violation of the rule does not unequivocally require exclusion of the testimony. Unlike this case, the witness in Dawson was given a monetary incentive to testify. The circuit ultimately held that exclusion of his testimony was not required because the defendant was able to question the witness about his bias and the jury had the ultimate decision of

whether the witness was credible.

The court does not find that provision of cell phones to witnesses with whom communication is difficult and providing medical care to ill witnesses is an excessive reimbursement that would require the exclusion of testimony. Most importantly, the court does not find that it warrants dismissal.

### C.    Foreign Payments

Defendant challenges the payments issued to the witnesses on the basis that the regulation only allows for payments within the United States. The regulation does state that the judicial proceeding must be one in the United States, 28 C.F.R. 21.1; however, the regulation also provides reimbursement to witnesses in foreign countries, see 28 C.F.R. 21.4(c). Based on the language in the regulation, the court finds that payment to African witnesses was allowed.

### D.    Transportation Costs

Defendant asserts that the government failed to comply with 28 U.S.C. § 1821 in reimbursing the witnesses for their travel costs because the witnesses had varying payments and defendant's investigators found that travel expenses were less than what was paid. The government responds that they reimbursed witnesses based on the actual costs of transportation. The logical reason for the disparity of payments is the mode of transportation and the location of witnesses. Clearly, not all witnesses traveled from the same location. Moreover, the statute allows for different modes of transportation. As the statute allows for reimbursement and defendant has not identified an improper payment, the court cannot conclude that the government has made an improper payment. In any event, if an

improper payment did occur, the court would not find that dismissal of the case is an appropriate sanction.

### E. Meal Payments

Defendant contends that the payments made to witnesses for their meals were actually improper witness payments because they were not consistent amounts on different occasions. The government responds that the amounts varied depending on the city that the witness was in and the amount of time the witness was in the city. The government also states that it raised the payments for meals because it had initially paid an amount which was later discovered to be insufficient. As defendant has pointed out, the government may pay up to 50% of the per diem rate for foreign locations. As stated in its response, the government did not exceed the per diem rate for its witnesses and was actually significantly below the rate allowed.

The court finds that the government has not overpaid witnesses for their meals in contravention of the regulations.

### F. Disclosure

Finally, defendant requests an order from the court requiring the government to provide complete and unredacted copies of its spread sheets and for specific information relating to the payments. The government responds that it has complied with its obligations and defendant has failed to show that the additional information is material. Brady requires the Government to disclose only "evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." United States v. Bagley, 473 U.S. 667, 675, 105 S. Ct. 3375, 87 L. Ed.2d 481 (1985); United States v. Walters, 269 F.3d 1207, 1214 (10th Cir. 2001). To establish a Brady

violation, a defendant must demonstrate "(1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material." Walters, 269 F.3d at 1214. "The evidence is material only if there is a reasonable probability that, [were] the evidence [to be] disclosed to the defense, the result of the proceeding would [be] different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S. Ct. at 3383. Defendant has not attempted to show materiality in his motion. Moreover, "although the government is obligated to turn over evidence in its possession that is both favorable to the defendants and material to their guilt or punishment, Pennsylvania v. Ritchie, 480 U.S. 39, 57, 107 S. Ct. 989, 1001, 94 L. Ed.2d 40 (1987), the government is not obligated to provide defendants with unlimited discovery of everything it knows, United States v. Agurs, 427 U.S. 97, 106, 109, 96 S. Ct. 2392, 2398, 2400, 49 L. Ed.2d 342 (1976), nor is the government obligated to give the defendant unsupervised authority to search through its files." United States v. Burger, 773 F. Supp. 1419, 1426 (D. Kan. 1991).

The court finds that defendant has failed to make an adequate showing which would require disclosure under Brady.

**III. Conclusion**

Defendant's motion to dismiss is denied. (Doc. 278).

IT IS SO ORDERED.

Dated this   18th   day of April 2011, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE